UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

_____

MARK ANTHONY HARDY,

                    Plaintiff,                    Case No. 1:14-cv-992

v.                                          Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants MDOC, Heffelbower, Heyns, Russell and Unknown Legal Affairs Grievance Specialist. The Court also will dismiss Plaintiff's due process claims against Defendants Stoddard, Almy and Lauer.  The Court will serve the complaint against Defendants Stoddard, Almy and Lauer with regard to Plaintiff's claim of racial discrimination.

**Factual Allegations**

Plaintiff is incarcerated in the Carson City Correctional Facility, but the events giving rise to his action occurred at the Richard Handlon Correctional Facility (MTU). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC), MDOC Director Daniel Heyns, Legal Affairs Manager Richard Russell, Legal Affairs Grievance Specialist (Unknown Party) and the following MTU employees: Grievance Coordinator C. Heffelbower, Warden Catherine Stoddard, Property Room Officer (Unknown) Almy, and Resident Unit Manager (Unknown) Lauer.

Plaintiff was transferred to MTU on May 18, 2012. He was allowed to keep all of his property, except for a soft shell guitar case. After several months passed and Plaintiff saw other prisoners in possession of the very same guitar case, he filed a grievance regarding the matter. According to the Step I grievance response, the guitar case initially was withheld because it did not have Plaintiff's name or prisoner number on it. (Step I Grievance Response MTU 121201320019z, docket #1-3, Page ID#50.) However, it appears that even after ownership was established, Plaintiff was not permitted to possess the case. The grievance response concluded, "The guitar case in question is believed to be prisoner Hardy's. However the guitar case is still not allowed in the facility so it will be labeled with Prisoner Hardy's name and number and stored in the property room until Prisoner Hardy rides out." (*Id*.) Plaintiff contends that there was no rule or policy provided in support of the contention that the case was not allowed at the facility. Plaintiff, who is African American, alleges that he was not permitted to possess the guitar case, while other white prisoners were permitted to possess them. Plaintiff maintains that the only feasible reason for the difference in treatment is racial discrimination.

On June 13, 2012, Plaintiff ordered a guitar effects pedal that was offered on MTU's music order form.  Plaintiff filed a grievance when his order was delayed due to a revision of the music order form.  In the grievance, Plaintiff argued that his order should be processed because it was submitted before any change in the list resulting from the imposition of price limits.  The grievance respondent indicated that the old music order form had been reposted, and, thus, Plaintiff could order the pedal.  (Step I Grievance MTU 120800816001z, docket #1-2, Page ID#27.)  Because Plaintiff was permitted to order the pedal, he signed off on the grievance on August 9, 2012. However, after the pedal arrived at the facility, Plaintiff was informed that it was not allowed because the price of $149.00 was in excess of the allowable limit of $75.00 imposed by policy.[1] Plaintiff filed a second grievance concerning the matter.  The Step I grievance response acknowledged that Plaintiff had been permitted to order the pedal due to a staff miscommunication, but the pedal, in fact, was not allowed because it exceeded the $75.00 limit on the purchase price of musical equipment.  (Step I Grievance Response MTU 120900921027b, docket #1-2, Page ID#37.)

On August 22, 2012, Defendant Lauer called Plaintiff to her office to review and rehear Grievance No. MTU 120800816001z.  Plaintiff alleges that Lauer handed him a copy of the Step I Grievance with the final resolution and signatures "whited out." Plaintiff argued that the grievance had already been heard and resolved.  While Lauer ultimately acknowledged the previous

[1]Policy Directive 04.07.112, which governs "Prisoner Personal Property," provides:

No item may exceed a limit of $75 in retail value (i.e., price for which the item is being sold) unless it is specifically exempted from that limit by this policy or was authorized to be purchased prior to January 12, 1998. This limitation also applies to items on the Standardized Property List (Attachment D) unless the model listed exceeds $75. Required instructional material (e.g., book, cassette tape) for correspondence courses approved pursuant to PD 05.02.119 "Correspondence Courses" or for college programming offered pursuant to PD 05.02.112 "Education Programs for Prisoners" may exceed the $75 limit. All cost or value restrictions in this policy do not include the cost of tax or shipping.

MDOC Policy Directive 04.07.117(F) (eff. Dec. 12, 2013).

-3-

disposition of the grievance allowing Plaintiff to purchase the pedal, she told Plaintiff that it did not matter because the Warden had overruled it. Plaintiff contends that Defendant Lauer, acting in concert with Defendants Stoddard and Almy, dismissed the binding disposition in Grievance No. MTU 120800816001z through an illegal procedure and sent the effects pedal back to the vendor without conducting a proper notice of intent hearing. Plaintiff asserts that Defendants "deprived [him] of the liberty interest rights as created and required by M.D.O.C. policies and Admin. Rules..." (Compl. Page ID#9.) He further alleges Defendant Almy, Stoddard and Lauer's actions were motivated by unfair racial discrimination as white prisoners were allowed to purchase and possess the same guitar effects pedal.

Plaintiff claims that Defendant Heffelbower was aware of the fraudulent hearing procedure that was perpetrated with regard to Grievance No. MTU 120800816001z, but failed to take corrective action. In addition, Plaintiff alleges that Defendants Russell and Unknown Legal Affairs Grievance Specialist failed to take corrective action in response to Plaintiff's grievance appeals asserting racial discrimination. He further contends that they deprived him of a fair grievance appeal process by not performing their duties as required by policy. In addition, Plaintiff maintains that Defendants MDOC and Heyns have allowed their employees to manipulate and violate the policy governing the prisoner grievance process.

Plaintiff also makes allegations concerning his termination from employment as a library clerk. As part of his job as library clerk, Plaintiff was required to walk around to the different housing units to pick up the sign-up sheets for inmate library visits. On April 26, 2013, while Plaintiff was out picking up the library sign-up sheets, Officer Lehman stopped Plaintiff for being in the yard of a unit where he was not assigned. Plaintiff alleges that he was terminated from his job

-4-

as a result of the incident, but was not charged with any misconduct.  Plaintiff filed a grievance

claiming that he was wrongfully terminated from his job assignment.  Inspector J. Kincaid prepared

the following memorandum in response to the Step I grievance:

> Prisoner Hardy was removed from the Library clerk position on 04.26.2013.  Officer
> Lehman had seen him go back to B Unit to pick up the Library callouts and then
> proceed to C Unit where Officer Lehman witnessed him shake the hand of a prisoner
> Ali.  At that time both prisoners were shaken down by Officer Ardis.  There was
> nothing found on neither [sic] prisoner at that time.  Officer Lehman laid prisoner
> Hardy in at that time.  There were no tickets written on prisoner Hardy.
>
> Librarian Rose has produced a 363 work report for prisoner Hardy and discontinued
> his job assignment at the Library.  There was no reason that prisoner Hardy was fired
> from his position other than lack of communication between staff.  Since this
> incident, a change has been made to how the clerks will proceed in picking up
> callouts from the units.  The process is the clerk will report to work within there [sic]
> time and the librarian will notify the yard that the clerk is leaving the School building
> to pick up the callouts so staff are aware of the movement.  Ms. Rose was advised to
> correct the 363 that was produced for prisoner Hardy at the time of the incident.
>
> Prisoner Hardy is to be given a job as the Chaplin's Clerk as he had requested this
> position on several occasions but was not able to be released from his library
> assignment due to the lack of educated prisoners to take over his assignment in that
> area.

(5/22/13 Kincaid Mem., docket #1-3, Page ID#67.)  Plaintiff signed off on the Step I grievance,

indicating that the issue was resolved.

Plaintiff alleges that Defendant Heffelbower was aware that Plaintiff could not do his

job as library clerk without violating yard rules, but refused to order an investigation in response to

Plaintiff's grievance.  Plaintiff also alleges in the complaint that "State Officials . . . retaliat[ed] and

punish[ed] Plaintiff for utilizing his grievance right through the adverse actions of falsifying a major

misconduct against the Plaintiff, that forced him to be fired from his law library clerk's detail . . . .

Then transferring Plaintiff to the same facility that MTU's Acting Warden Mrs. Stoddard who

participate[d] in the above unlawful conduct, was also transferred too [sic]." (Compl., Page ID#5.)

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

**Discussion**

I.   Immunity

Plaintiff may not maintain a § 1983 action against the MDOC.   Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.   *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).   Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.   *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).   In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.   *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).   In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.   *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).   Therefore, the MDOC will be dismissed from this action.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   While

-6-

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Defendants Heffelbower, Russell, Unknown Legal Affairs Grievance Specialist and Heyns**

Plaintiff alleges that Defendants Heffelbower, Russell and Unknown Legal Affairs Grievance Specialist failed to investigate and/or take corrective action in response to Plaintiff's grievances and grievance appeals. He further contends that they deprived him of a fair grievance appeal process by not performing their duties as required by policy.

As an initial matter, Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' alleged conduct could not deprive him of due process.

Moreover, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive

does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580.  Accordingly, Defendants Heffelbower, Russell and Unknown Legal Affairs Grievance Specialist will be dismissed for failure to state a claim.

Plaintiff contends that Defendant Heyns permitted his employees to manipulate and violate the policy governing the prisoner grievance process.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Heyns engaged in any active unconstitutional behavior.  Accordingly, Plaintiff also fails to state a claim against Defendant Heyns.

## B.    Termination from Library Clerk Position

Plaintiff claims that he was wrongfully terminated from his position as a library clerk. Plaintiff does not name as Defendants in this action those individuals directly responsible for his

termination, i.e., Officer Lehman and Librarian Rose.  Regardless, the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).  Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Plaintiff also appears to raise a retaliation claim in connection with his termination. He alleges in relevant part that  "State Officials . . . retaliat[ed] and punish[ed] Plaintiff for utilizing his grievance right through the adverse actions of falsifying a major misconduct against the Plaintiff, that forced him to be fired from his law library clerk's detail . . . .  Then transferring Plaintiff to the same facility that MTU's Acting Warden Mrs. Stoddard who participate[d] in the above unlawful conduct, was also transferred too [sic]."[2]  (Compl., Page ID#5.)

----

[2]While Plaintiff asserts here that State Officials retaliated against him by falsifying a major misconduct charge, Plaintiff alleges elsewhere in his complaint that he was terminated from his job as library clerk "without a major misconduct being issues and inspite [sic] of his excellent work record."  (Compl., docket #1, Page ID #10.) The memorandum from Inspector Kincaid also states that no misconduct tickets were written against Plaintiff as a result of the incident.  Nevertheless, for purposes of this opinion, the Court will assume that a false major misconduct report was issued against Plaintiff.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming for purposes of this opinion that Plaintiff satisfies the first two requirements for a retaliation claim, he fails to allege facts showing that one or more of the named Defendants took the adverse action as a result of Plaintiff's grievances. Plaintiff generally asserts that "State Officials" retaliated against him without attributing conduct to specific Defendants. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). As discussed above, Plaintiff does not name as Defendants any of the individuals directly responsible for the alleged discipline or termination. Plaintiff, therefore, cannot sustain a retaliation claim against any of the named Defendants. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that any of the named Defendants retaliated against him because he filed a grievance. Accordingly, his speculative allegation fails to state a claim.

C.    **Defendants Stoddard, Almy and Lauer**

Plaintiff alleges that Defendant Stoddard, Almy and Lauer violated his due process rights and violated department policy and administrative rules when they altered the disposition in Grievance No. MTU 120800816001z. As previously discussed, Plaintiff has no due process right to file a prison grievance. *See Walker*, 128 F. App'x at 445. Therefore, to the extent Plaintiff brings a due process claim against Defendants Stoddard, Almy and Lauer arising from the grievance process, it will be dismissed for failure to state a claim. Likewise, Plaintiff fails to state a cognizable federal claim against these Defendants arising from the alleged failure to comply with administrative rules or policies. *See Laney*, 501 F.3d at 581 n.2; *Brody*, 250 F.3d at 437.

The Court will serve the complaint against Defendants Stoddard, Almy and Lauer with regard to Plaintiff's claim of racial discrimination.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Heffelbower, Heyns, Russell and Unknown Legal Affairs Grievance Specialist will be dismissed as immune or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's due process claim against Defendants Stoddard, Almy and Lauer for failure to state a claim. The Court will serve the complaint against Defendants Stoddard, Almy and Lauer with regard to Plaintiff's claim of racial discrimination.

An Order consistent with this Opinion will be entered.


Dated:    April 16, 2015            /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE