UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY HARDY,

      Plaintiff,

Case No. 1:14-cv-992

Hon. Robert J. Jonker

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

      Defendants.
_____/

# REPORT AND RECOMMENDATION

      This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by the remaining defendants, Catherine Stoddard, Diana Almy and Margaret Lauer (docket no. 30).

      **I.**    **Plaintiff's complaint**

      **A.**    **Background**

      Plaintiff's *pro se* complaint seeks relief for alleged incidents which occurred at the Richard Handlin Correctional Facility (MTU). After the Court's initial screening of plaintiff's complaint, three defendants remain: MTU Warden Catherine Stoddard; MTU Property Room Officer Diana Almy; and MTU Resident Unit Manager (RUM) Margaret Lauer. Opinion (docket no. 10, PageID.150).[1] The Court previously dismissed all of plaintiff's claims against these defendants except those brought under the Equal Protection Clause of the Fourteenth Amendment:

---

[1] The record reflects that CO Almy is now retired. *See* Almy Aff. (docket no. 31-4, PageID.262).

(1) that plaintiff was not permitted to possess a guitar case, while white prisoners were permitted to possess the same case; and (2) that plaintiff was not permitted to purchase and possess a guitar effects pedal, while white prisoners were allowed to purchase and possess the same pedal.

### B. The guitar case

The Court previously summarized plaintiff's claim regarding the guitar case as follows:

> Plaintiff was transferred to MTU on May 18, 2012. He was allowed to keep all of his property, except for a soft shell guitar case. After several months passed and Plaintiff saw other prisoners in possession of the very same guitar case, he filed a grievance regarding the matter. According to the Step I grievance response, the guitar case initially was withheld because it did not have Plaintiff's name or prisoner number on it. (Step I Grievance Response MTU 121201320019z, docket #1-3, Page ID#50.) However, it appears that even after ownership was established, Plaintiff was not permitted to possess the case. The grievance response concluded, "The guitar case in question is believed to be prisoner Hardy's. However the guitar case is still not allowed in the facility so it will be labeled with Prisoner Hardy's name and number and stored in the property room until Prisoner Hardy rides out." (*Id.*) Plaintiff contends that there was no rule or policy provided in support of the contention that the case was not allowed at the facility. Plaintiff, who is African American, alleges that he was not permitted to possess the guitar case, while other white prisoners were permitted to possess them. Plaintiff maintains that the only feasible reason for the difference in treatment is racial discrimination.

*Id.*

### C. The guitar pedal

The Court previously summarized plaintiff's claim regarding the guitar pedal as follows:

> On June 13, 2012, Plaintiff ordered a guitar effects pedal that was offered on MTU's music order form. Plaintiff filed a grievance when his order was delayed due to a revision of the music order form. In the grievance, Plaintiff argued that his order should be processed because it was submitted before any change in the list resulting from the imposition of price limits. The grievance respondent indicated that the old music order form had been reposted, and, thus, Plaintiff could order the pedal. (Step

2

> I Grievance MTU 120800816001z, docket #1-2, Page ID#27.) Because Plaintiff was permitted to order the pedal, he signed off on the grievance on August 9, 2012. However, after the pedal arrived at the facility, Plaintiff was informed that it was not allowed because the price of $149.00 was in excess of the allowable limit of $75.00 imposed by policy. Plaintiff filed a second grievance concerning the matter. The Step I grievance response acknowledged that Plaintiff had been permitted to order the pedal due to a staff miscommunication, but the pedal, in fact, was not allowed because it exceeded the $75.00 limit on the purchase price of musical equipment. (Step I Grievance Response MTU 120900921027b, docket #1-2, Page ID#37.)

*Id.* at PageID.140 (footnote omitted). Plaintiff further alleged that Defendant Almy, Stoddard and Lauer's actions were motivated by unfair racial discrimination as white prisoners were allowed to purchase and possess the same guitar effects pedal. *Id.* at PageID.141.

Based on these incidents involving the guitar case and guitar pedal, plaintiff seeks $1,500,000.00 against defendants along with the cost of lost or damaged property: punitive damages ($300,000.00 against Warden Stoddard, $300,000.00 against CO Almy, and $150,000.00 against RUM Lauer); "mental and emotional stress" ($300,000.00 against Warden Stoddard, $300,000.00 against CO Almy, and $150,000.00 against RUM Lauer); "property repair and replacement" ($3,764.00 against each defendant). Compl. at PageID.15. Plaintiff also requests injunctive relief. *Id.* at PageID.14-15.

## II.   Defendants' motions for summary judgment

### A.   Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

B.  **Failure to Exhaust**

1.  **Exhaustion requirement**

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

2.  **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved,

then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

The record reflects that plaintiff filed two grievances relevant to his claims. In Grievance MTU-12-12-1320-19z ("1320"), plaintiff complained at Step I that CO Almy improperly took his guitar case when he transferred into the facility. *See* Grievance 1320 (docket no. 31-3, PageID.229). However, Grievance 1320 does not name Warden Stoddard or RUM Lauer as required by Policy Directive 03.02.130 ¶ R. Plaintiff did not properly exhaust this claim against these two defendants. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Lauer and Stoddard should be granted summary judgment with respect to this claim.

In Grievance MTU-12-09-0921-27b ("921"), Hardy complained that CO Almy, RUM

Lauer and Warden Stoddard acted in a discriminatory manner when they denied him the guitar pedal which he ordered for $149.00. *See* Grievance 921 (docket no. 31-3, PageID.253). Plaintiff noted that this issue was resolved in a previous grievance proceeding with Chaplain Leslie (MTU 120800816001z), that the signed grievance resolution was a "stipulated agreement" on that issue, and that a check was generated to pay for it on August 7, 2012. *Id.* at PageID.253-254. On August 22, 2012, RUM Lauer's Office re-reviewed the grievance and it was determined that he could not order it. *Id.* at PageID.254.

Former defendant MTU Grievance Coordinator Heffelblower summarized plaintiff's grievance in the Step I response to Grievance 921, which provided in pertinent part as follows:

> Grievant claims he is being discriminated against because he was allowed to order a Guitar Effects Peddle for $149.00. Once the item was received at the facility, he was informed that the peddle [sic] was indeed not allowed as it was too expensive and it was going to be returned. He wishes to have the first grievance he filed and signed off on approved which permitted the $149.00 peddle [sic] to be ordered and be allowed to have it.
>
> \*   \*   \*
>
> Prisoner is correct that he was allowed to order the $149.00 peddle [sic]. However, due to staff miscommunication the peddle [sic] should have never been allowed to be ordered. Policy limits the purchase price of musical instruments to $75.00.
>
> \*   \*   \*
>
> PD 04.07.112 attachment C, #38 clearly states that a musical instrument can not exceed $75.00. Prisoner was informed that the original order was going to be returned and he will be fully reimbursed the amount he paid for the order. There was no discrimination intended or conspiracy planned. The property was returned in order to stay in compliance with policy. Grievance denied.

Grievance 921 Step I Response at PageID.256. Defendants concede that plaintiff exhausted this grievance. Defendants' Brief (docket no. 31, PageID.198). Accordingly, defendants do not seek summary judgment for lack of exhaustion of this claim.

### C. Plaintiff's Equal Protection claims

#### 1. Legal standard

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To establish an equal protection claim under § 1983, a plaintiff must show that he is a member of a protected class and that he was intentionally and purposefully discriminated against because of his membership in that protected class. *Jones v. Union County, Tennessee*, 296 F.3d 417, 426 (6th Cir. 2002); *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000); *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir.1990). In order to establish a violation of the Equal Protection Clause in the context of a racial discrimination claim, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials. *Copeland*, 57 F.3d at 480. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Michigan Department of Corrections*, 432 Fed.Appx. 453, 458 (6th Cir. 2011).

### 2. Plaintiff's claim against CO Almy regarding the guitar case

Pursuant to policy, the Warden of each facility approves the specific type of instrument cases permitted at the facility. *See* Diana Almy Aff. (docket no. 31-4, PageID.263); MDOC Policy Directive 04.07.112 (eff. 1/1/10), Attachment C (eff. 1/1/10) ("Prisoners housed in either Level I or II shall be allowed to purchase and possess only the following: . . . 40. One musical instrument and one case, as specifically approved by the Warden in which the prisoner is housed. . . The case must be labeled or inscribed with the prisoner's identification number prior to delivery to the prisoner[.]") (docket no. 31-4, PageID.273, 276). In her affidavit, CO Almy stated that, "Plaintiff was not permitted to possess the guitar case and it was stored in the Property Room, as it was my understanding and belief that the type of case was not permitted at MTU." Almy Aff. at PageID.263. However, the affidavit does not address the Warden's definition of the type of guitar case allowed at MTU or an explanation as to why plaintiff's guitar case did not meet that definition.

Plaintiff has not presented any direct evidence of race discrimination by CO Almy. Rather, plaintiff apparently seeks to demonstrate a *prima facie* case of discrimination by submitting affidavits by two prisoners. First, plaintiff presented an affidavit from his cousin, Ronald Anthony Thurmond, which included a statement that a white prisoner nicknamed "Stevie" had the same guitar case as plaintiff, i.e., the same shape, size and color. Thurmond Aff. (docket no. 34-2, PageID.351). Second, plaintiff submitted an affidavit from prisoner Jimmy Eric Green, who stated that a white inmate named "Stevie or Star" was allowed to have the same black guitar case as plaintiff owned. Green Aff. (docket no. 34-2, PageID.355). Plaintiff has presented facts to support a *prima facie* case of discrimination under the *McDonnell Douglas* framework by presenting evidence that he was not

allowed to keep the same type of guitar case that a similarly situated white prisoner at MTU was allowed to keep. *See, e.g., Flakes v. Brown*, No. 1:16-cv-418, 2016 WL 3536671 at *7 (W.D. Mich. June 29, 2016) (where a prisoner complained of race discrimination due to confiscation of pictures, the prisoner failed to establish a prima facie case under the *McDonnell Douglas* framework because the prisoner "allege[ed] no facts suggesting that a similarly situated white prisoner was allowed to keep substantially identical pictures"). A genuine issue of material fact exists as to whether plaintiff's guitar case was allowed at MTU under MDOC Policy Directive 04.07.112 . Accordingly, defendant Almy's motion for summary judgment should be denied with respect to the guitar case.

        **3.**    **Plaintiff's claims against RUM Lauer, CO Almy and Warden Stoddard regarding the guitar pedal**

        **a.**    **RUM Lauer**

In her affidavit, RUM Lauer stated that her involvement in this matter was to review the Step I grievance response submitted by Chaplain Leslie and an attempt to interview plaintiff once it became apparent the grievance resolution was reached in error. *See* Lauer Aff. (docket no. 31-6, PageID.296-299); Grievance MTU 120800816001z ("816") (docket no. 31-6, PageID.300). As discussed, in the initial response dated August 9, 2012, Chaplain Leslie incorrectly responded to the grievance by allowing plaintiff to "order the effects peddle [sic] he wants." *See* Grievance 816 at PageID.300. RUM Lauer initially signed off as the reviewer of this grievance on August 13, 2012. *Id.* However, as discussed in § II.B.3, *supra*, the purchase was contrary to MDOC Policy Directive 04.07.112 for the reasons discussed by former defendant Heffleblower in the response to Grievance 921. Based on this record, RUM Lauer's only role was that of a grievance reviewer. A prison official whose only role involved the review of an administrative grievance cannot be liable under

§ 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983). *See Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"); *Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, defendant Lauer's motion for summary judgment should be granted.

    **b. CO Almy and Warden Stoddard**

    In her affidavit, CO Almy stated that in June 2012, plaintiff ordered a guitar pedal with a value of $149.00. Almy Aff. at PageID.263. However, since at least January 1, 2010, MDOC's property policy has provided that "[n]o item may exceed a limit of $75 in retail value. . . . unless it is specifically exempted from that limit by this policy . . ." Policy Directive 04.07.112 ¶ F (PageID.266). In her affidavit Warden Stoddard stated that "[d]ue to staff misunderstanding, Plaintiff should never have been allowed to order the guitar effects peddle [sic] because it had a retail price of $149." Warden Stoddard Aff. (docket no. 31-5, PageID.280). In an apparent effort to establish a *prima facie* case of race discrimination, plaintiff submitted the affidavit of prisoner Thurmond, who stated in pertinent part:

> There were two white inmates who were allowed to purchase and have the same effect peddle [sic], that [plaintiff] ordered but was not allow [sic] to keep. I do not remember their names, but this fact was verified by Steve-X, an inmate that was assisting my cousin with this problem.

Thurmond Aff. at PageID.351. Prisoner's Thurmond's conclusory statement is insufficient to establish a *prima facie* case of discrimination because it does not identify a similarly situated white

prisoner. Thurmond does not identify the individuals, their prison, or the time frame when they purchased the guitar pedals. In addition, it appears that Thurmond is relying on hearsay evidence which was "verified" by another prisoner. Plaintiff has failed to present a *prima facie* case for an Equal Protection claim related to the guitar pedal. Accordingly, CO Almy and Warden Stoddard are entitled to summary judgment on this claim.

> D. **Damages for mental and emotional injuries**

As part of his relief, plaintiff seeks compensatory damages for mental and emotional stress. Claims for mental and emotional injury are barred by 42 U.S.C. § 1997e(e), which provides in pertinent part that, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a showing of physical injury[.]" Plaintiff does not allege or demonstrate that he suffered a physical injury. Absent a physical injury, plaintiff's claims for mental and emotional injury are barred by § 1997e(e). *See, e.g, Meade v. Plummer*, 344 F. Supp. 2d 569, 574 (E.D. Mich. 2004) ("It plainly appears that the plaintiff seeks damages for mental and emotional injury, and the undisputed facts establish that no physical injury occurred. Those damages are barred by Section 1997e(e)."). Accordingly, defendants should be granted summary judgment on plaintiff's claims for mental and emotional injuries.

> E. **Eleventh Amendment immunity**

Plaintiff's claims for monetary damages against defendants CO Almy, Warden Stoddard and RUM Lauer in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against

states and against state employees sued in their official capacities"). Accordingly, defendants should be granted summary judgment on plaintiff's claims seeking monetary damages for actions performed in their official capacities.

### F. Qualified immunity

Defendants contend that they are entitled to summary judgment on the affirmative defense of qualified immunity.[2] Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The dispositive question is whether the violative nature of the particular conduct at issue in the lawsuit is clearly established. *See Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308 (2015). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 135 S. Ct. at 350.

When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to

---

[2] The Court notes that because defendant has not filed an answer in this action, he has not pled the affirmative defense of qualified immunity, but has raised it in the context of a motion for summary judgment. *See generally, Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Defendant has the burden of pleading qualified immunity in his answer . . . It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful.").

qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* To meet his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

For the reasons discussed in § II.C.3, *supra*, plaintiff has failed to establish a constitutional violation against CO Almy and Warden Stoddard with respect to the guitar pedal. Accordingly, defendants should be granted summary judgment as to this claim. However, as discussed, in § II.C.2, *supra*, genuine issues of material fact exist as to whether CO Almy violated plaintiff's constitutional rights with respect to the guitar case. Accordingly, defendant Almy's motion for summary judgment should be denied as to this claim.

    **G.**   **Injunctive relief**

Plaintiff is currently incarcerated at the Carson City Correctional Facility. Plaintiff's transfer from MTU rendered his request for injunctive relief against defendants moot. *See Kensu v. Haight*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for declaratory and injunctive relief for prison staff's improper examination of his legal mail found moot because he was no longer

14

confined at the facility that searched his mail); *Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when prisoner was transferred from the prison of which he complained to a different facility). Accordingly, defendants should be granted summary judgment on plaintiff's claim for injunctive relief.

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 30) be **GRANTED** as to all three defendants with respect to plaintiff's Equal Protection claim involving the guitar pedal.

I further recommend that defendants' motion be **GRANTED** as to plaintiff's claims for injunctive relief.

I further recommend that defendants' motion be **GRANTED** as to plaintiff's claims for monetary damages against defendants in their official capacities.

I further recommend that defendants' motion be **GRANTED** as to plaintiff's claims for mental and emotional injuries.

I further recommend that defendants' motion be **GRANTED** as to defendants Warden Stoddard and RUM Lauer with respect to plaintiff's Equal Protection claim involving the guitar case.

I further recommend that defendants Warden Stoddard and RUM Lauer be **DISMISSED** from this action.

I further recommend that defendants' motion be **DENIED** as to defendant CO Almy with respect to plaintiff's Equal Protection claim involving the guitar case and that this action proceed against CO Almy on this single claim.

Dated: September 7, 2016         /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).